UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAPITAL TELECOM
HOLDINGS II, LLC, *et al.*,

    Plaintiffs,

v.

    Case No. 2:18-cv-552
    JUDGE GEORGE C. SMITH
    Magistrate Judge Jolson

GROVE CITY, OHIO,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court upon Plaintiffs' Motion for Summary Judgment on Counts I and II ("Plaintiffs' Motion") (Doc. 13) and Defendant's Motion for Summary Judgment on Counts I, II, and IV ("Defendant's Motion" (Doc. 14) and together with the Plaintiffs' Motion, the "Motions"). The Motions are fully briefed and ripe for disposition. Following the submission of Defendant's Motion, the parties stipulated to the dismissal of Count IV. (Doc. 15, Stip. Dismissal). Pursuant to the Stipulation, Count IV is hereby **DISMISSED**. For the following reasons, Plaintiffs' Motion is **DENIED** and Defendant's Motion is **GRANTED**.

**I.    BACKGROUND**

Plaintiffs desire to construct a telecommunications tower and related facility to improve and overcome a significant gap in wireless telecommunications service by Verizon, a national wireless telecommunications carrier. (Doc. 1, Compl. ¶ 8). Plaintiffs identified a site at 3363 McDowell Road, Grove City, Ohio 43123 (the "Site") that would address that need for improved wireless telecommunications service and close an identifiable and significant service gap. (Doc.

14-1, Joint Exhibit A (Method of Rezoning Application) PAGEID #402). The Site is zoned C-2 Retail Commercial. (*Id.*). In January 2018, Plaintiffs submitted a zoning application (the "Application") to Grove City seeking use approval for its proposed telecommunications tower and facility to be built at the Site. (*Id.* at PAGEID #403). The Application included site plans and construction drawings for a telecommunications tower and related facility. (*Id*. at PAGEID #421-26). The Application was a request "to place, construct, or modify personal wireless service facilities" as contemplated by the Telecommunications Act of 1996 (the "TCA"). (Doc. 14-1, Joint Exhibit A (Method of Rezoning Application); Doc. 1, Compl. at ¶ 14).

A zoning application goes through several steps before the Grove City Council (the "City Council") casts its final vote on the application. Pursuant to Section 1135.09 of the Grove City Codified Ordinances, first, the Grove City Planning Commission (the "Planning Commission") considers the application. (Doc. 1, Compl. at ¶ 16). The Planning Commission then recommends either approval or disapproval of the zoning application to the City Council. (*Id*.). After receiving the Planning Commission's recommendation, the City Council then has a first reading of the application. Next, the City Council holds a second reading of the application and holds a hearing on the application. Finally, the City Council votes on the zoning application. (*Id*.).

In the case at hand, prior to the Planning Commission holding its hearing on the Application, the Grove City Developmental Department provided a Planning Commission Staff Report to the Planning Commission. (Doc. 14-1, Joint Exhibit J (03062018 PC Staff Report)). The Planning Commission Staff Report recommended that the Planning Commission recommend approval of the Plaintiffs' Application to the City Council so long as eight stipulations were met. (Doc. 14-1, Joint Exhibit G (03062018 PC Minutes) PAGEID #467). The Planning Commission held its hearing on Plaintiffs' Application on March 6, 2018, and voted not to recommend approval

2

of the Application to the City Council by a vote of 2-2. (*Id*. at PAGEID #465-69; Doc. 14-1, Joint Exhibit G (03062018 PC Minutes) at PAGEID #474).

The Planning Commission's 2-2 vote regarding the Application was forwarded to the City Council to consider the Application. The City Council considered the Application, titled Ordinance C-20-18, which, if passed, would "Approve the Use for a Telecommunications Tower for Verizon Wireless located at 3363 McDowell Road." (Doc. 14-2, Joint Exhibit L (03192018 Legislative Agenda) at PAGEID #476). The City Council held its first reading of Ordinance C-20-18 at its meeting on March 19, 2018. (*Id*. at PAGEID #475). The City Council held its second reading, and public hearing, regarding Ordinance C-20-18, on April 16, 2018 (the "Hearing."). (Doc. 14-2, Joint Exhibit S (04162018 Legislative Agenda) at PAGEID #496).

At the Hearing, the City Council discussed a range of issues regarding the application. The City Council, reading from the Planning Commission Staff Report, identified several ways the proposed cell tower did not comply with requirements of the Grove City Zoning Code. Councilman Schottke, reading from the Planning Commission Report, stated that the land where the proposed tower would be built was not appropriately zoned. (Doc. 14, Joint Exhibit U (04162018 Minutes) at PAGEID #500). The Grove City Zoning Code requires that telecommunications towers be built in one of four zoned areas: IND-1, IND-2, CF, or SD-4. (*Id*.). Because Plaintiffs proposed that the tower be built in an area zoned C-2, the proposed tower would not be located in an appropriately zoned area. Further, Councilman Schottke, reading from the Planning Commission Report, stated that the Grove City Zoning Code requires that "the base of the antenna be setback from all abutting property no less than 100% of its height" and that the proposed cell tower would not meet such requirement. (*Id*.). The councilmembers discussed several other concerns with the tower including: the encroachment of the proposed tower on the

FEMA Steam Corridor Protection Zone and the sanitary sewer area and easement, the appearance of the tower and its affect on commercial site lines, what would happen should the tower not be built, whether Plaintiffs gave local residents notice of the tower, whether the tower could be moved to an appropriately zoned area, and how long the proposed tower would solve the coverage problems. (*Id*.).

Plaintiffs responded to the concerns of the councilmembers at the meeting. They admitted that the proposed tower was not in an appropriately zoned area. (*Id*. at PAGEID #501). However, Plaintiffs contended that they could not find a suitable area to address the significant gap in cell coverage in an appropriately zoned area and that was why they were applying for a zoning variance. (*Id*.). Maurice Aguiler, a Verizon engineer, speaking on behalf of Plaintiffs, explained that the location was selected because it would split the traffic between three existing towers and thus reduce the capacity of all three towers. (*Id*. at PAGEID #500). Plaintiffs also discussed the other areas they evaluated for the tower and why those areas were not suitable. (*Id*.). Plaintiffs explained that the tower did not meet the 100% setback requirement because they were keeping the tower out of the Steam Corridor Protection Zone, and that if they did not have to stay out of that area, then they would meet the 100% setback requirement. (*Id*. at 501). Further, Plaintiffs explained that they designed the tower to "break like a bendy straw" so that it would avoid falling on area buildings if it ever fell. (*Id*.). Finally, Plaintiffs explained that the proposed tower would be in a commercial area and not within 300 feet of residential property, and that is why no notice was provided to local residents. (*Id*.). The Plaintiffs did offer to notify residents of the proposed tower if the City Council so desired. (*Id*.).

After the discussion regarding the proposed cell tower concluded, one councilman moved that the Application be approved. (*Id*.). The motion died for a lack of a second. (*Id*.). At the end

of the Council Meeting, the City Council voted 4-1 to "postpone indefinitely" the Application. (*Id.* at PAGEID #401). Pursuant to an email from Grove City's Law Director, Stephen Smith, the City Council's action to "postpone indefinitely" constituted a denial of the Application. (Doc 14, Joint Exhibit Y (Correspondence) at PAGEID #532). In this email, Mr. Smith also informed Plaintiffs that a written decision would occur once the City Council approved the minutes from the April 16th Council Hearing. (*Id.*).

On May 7, 2018, the City Council approved its written minutes (the "Minutes") from the Hearing. (Doc. 14-2, Joint Exhibit X (05072018 Minutes) at PAGEID #507). Aside from the Minutes, the City Council issued no other written decision on the Application. (Doc. 1, Compl. at ¶ 31).

## II.  STANDARD OF REVIEW

Both Plaintiffs and Grove City move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

That the parties have filed cross-motions for summary judgment does not alter the Court's standard of review. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). Thus, in reviewing cross-motions for summary judgment, the Court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

## III. DISCUSSION

This case is one of statutory interpretation. The outcome turns on whether Grove City complied with the TCA's requirements. For that reason, this Court will first overview the text and purpose of the TCA and then turn to whether Grove City's actions complied with the statute.

### A. Overview of the TCA Requirements

In 1996, Congress wanted to promote competition and improve the quality of American telecommunications services. *See City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 115 (2005). Congress aimed to accomplish this goal by removing "impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Id*. The TCA, which governs the present case, was the vehicle through which Congress tried to carry out these goals.

As with any exercise in statutory interpretation, this Court begins with the text of the statute. In relevant part, the TCA states:

> Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(7)(B)(iii). Breaking this text down into its component parts, it is clear that the statute requires a local government to do two things when it denies a request to place, construct, or modify a personal wireless service facility. *See Am. Towers LLC v. Town of Shrewsbury*, No. CV 17-10642-FDS, 2018 WL 3104105, at *6 (D. Mass. June 22, 2018). First, the denial must be in writing. *Id*. Second, the denial must be supported by substantial evidence that is contained in a written record. *Id*. The TCA does not require that the written denial also contain the substantial evidence required to support such denial. *T-Mobile South, LLC v. City of Roswell, Ga*, 135 S. Ct. 808, 815 (2015) ("The second question we answer is whether these reasons must appear in the same writing that conveys the locality's denial of an application. We answer that question in the

negative."). Thus, it is perfectly acceptable for a municipality to deny an application and support that denial in a separate written document. *Id*. Similarly, there is nothing in the text preventing the written denial from also containing the substantial evidence supporting the denial. *Id.* at 815–16 ("Other than providing that a locality's reasons must be given in writing, nothing in [the statutory] text imposes any requirement that the reasons be given in any particular form"). In other words, the written denial and substantial evidence can be, but need not be, separate from each other.

The TCA also provides legal recourse for those who have had their applications denied. The relevant text of the statute states:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.

47 U.S.C. § 332(7)(B)(v). For the purposes of this case, the important takeaway from this part of the statute is that the "final action" of the government triggers the 30-day filing requirement. The Supreme Court connected this "final action" requirement to the written denial requirement stating: "[t]he relevant 'final action' is the issuance of the written notice of denial, not the subsequent issuance of reasons explaining the denial." *Roswell*, 135 S. Ct. at 817 n.4. Thus, if the "final action" is the written notice of denial, then it logically follows that the written notice of denial must also be the "final action" of the municipality.

In the case at hand, the parties disagree whether Grove City followed two of the TCA's requirements. First, the parties disagree as to whether Grove City issued a denial in writing. Assuming there was a denial issued in writing, the parties then disagree as to whether Grove City supported such denial with substantial evidence. This Court turns to those issues now.

B.  **Requirement that the Denial be "In Writing"**

As a general principle, nothing in the TCA mandates how municipalities issue the written denial or the reasons for denial. *See id.* at 816. The TCA only requires that the decision be "in writing."

Plaintiffs argue that Grove City never issued a written denial because they received no denial notice and the published meeting minutes never explicitly deny the application. (Doc. 13, Pls. Mot. at 8 & 10). Grove City counters that their Law Director (Mr. Smith) sent Plaintiffs an email describing that the indefinite postponement of Ordinance C-20-18 constituted a denial, and thus, the email and the Minutes meet the written denial requirement. (Doc. 16, Response at 5); (Doc. 14-2, Joint Exhibit Y (Correspondence) at PAGEID #532). This Court agrees with Grove City in that they issued a written denial. However, this Court finds that the meeting minutes constitute the written denial, not the email from Mr. Smith.

1.  **The Email does not act as the Written Denial**

On April 18, 2018 Mr. Smith sent an email to Plaintiffs' attorney that stated:

> [a]s you saw on the video, Grove City Council did move to postpone indefinitely Ordinance C-20-18 and that motion was approved. Such action constitutes a denial. *The written decision will take place when Council approves the April 16 minutes* which should happen at their next regular meeting on May 7. If that changes, I will let you know.

(*Id.*) (emphasis added). While the email clearly states Grove City's position that Ordinance C-20-18 was denied, this Court finds that this email cannot constitute the written denial required by the TCA for two reasons. First, this cannot be considered a "final action" from the municipality from which legal obligations will flow. Second, the language in the email uses the future tense to describe a written decision that "will" take place in the future.

Congress intended to incorporate certain elements of administrative law into the TCA. *See Roswell*, 135 S. Ct. at 815 (noting that the term "substantial evidence" is a term of art in

9

administrative law and there is no evidence to show that Congress did not intend the phrase to have such meaning). In administrative law, it is well established that "agency action is 'final' if it 'mark[s] the consummation of the agency's decision making process' and determines 'rights or obligations' or triggers 'legal consequences.'" *Id.* at 817 n.4 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

While Mr. Smith may be an agent of Grove City, it cannot be said that the email from Mr. Smith to Plaintiffs "marks the consummation of the agency's decision making process" or "triggers 'legal consequences.'" Rather, Mr. Smith's email simply informed Plaintiffs that Grove City's decision at the hearing was a denial of the Application—it cannot stand as the consummation of the decision making process.

Mr. Smith's choice of words in the email amplifies this reality. Mr. Smith used the future tense to describe a written decision that would be forthcoming. This implies an official action of Grove City in the future. Therefore, Mr. Smith's email reinforces the fact that the email did not complete the decision making process and did not mark the "final action" of Grove City.

Because legal obligations did not flow from Mr. Smith's email and because the email specified that Grove City was taking further action on the proceedings, the email cannot serve as the written decision mandated by the TCA.[1] Therefore, this Court must look elsewhere to determine if Grove City issued a written decision.

---

[1] It should be noted that if this Court were to find that the email constitutes the written denial required by the TCA, then Grove City would be in violation of the TCA. The Supreme Court has held that the substantial evidence required by the TCA must be issued "essentially contemporaneously" with the written decision. *Roswell*, 135 S. Ct. at 815-18. If the email acted as the written decision, then this Court could not say that the Minutes approved over three weeks later were issued "essentially contemporaneously" with the written decision.

## 2. The Minutes do Act as the Written Denial

The next question is whether the Minutes themselves can serve as the written denial the TCA requires.

In *Roswell* the Supreme Court determined that because the TCA's text does not specify how the reasons for denial are presented, the written denial and written record could be, but need not be, one in the same. *Id*. at 816 ("we can locate in the Act no command—either explicit or implicit—that localities must provide those reasons in a specific document"). Applying that logic to the case at hand, this Court can find no TCA directive specifying what form the municipality's written decision must take. Similar to *Roswell*, this Court concludes that "Congress imposed no specific requirement on that front, but instead permitted localities to comply with their obligation" so long as the municipality denies the application. *Id*.

While it may be best practice to provide applicants a written decision separate from the written record, the TCA does not mandate such a practice. In *Roswell*, the Supreme Court noted that the there is no verb in the statute that imposes a notification burden upon municipalities. *Roswell*, 135 S. Ct. at 818 ("the statute at issue here does not use any verb at all to describe the conveying of information from a locality to an applicant; it just says that a denial 'shall be in writing and supported by substantial evidence contained in a written record.'") (internal citations omitted). While it may seem strange that the statute omits a notice requirement, it is important to remember that in statutory interpretation, the courts' role is to "apply the text, not improve upon it." *King v. Burwell*, 135 S. Ct. 2480, 2505 (2015) (quoting *Pavelic & LeFlore v. Marvel Entertainment Group, Div. of Cadence Industries Corp.*, 493 U.S. 120, 126 (1989)) (Scalia, J. dissenting). Therefore, it is a municipality's prerogative on how to issue the written decision; it

would be wrong of this Court to read a delivery requirement into the statute when no such requirement exists.

This Court finds that the TCA does not impose any specific requirements regarding the form in which the municipality presents its written decision. Therefore, meeting minutes containing a municipality's decision satisfies the "in writing" requirement of the TCA.

In the case at hand, the City Council made the decision to "postpone indefinitely" Ordinance C-20-18. Mr. Smith's email notified the plaintiffs that the decision to postpone indefinitely functions as a denial of the application. Further, the email specified that the final written decision would occur in the form of the Minutes approved by the City Council. Had no further action occurred, then the City Council would not have satisfied the requirements of the TCA. However, the City Council ratified the Minutes which contained the decision to postpone indefinitely Ordinance C-20-18. In other words, the written Minutes contained the denial of the Application. The approved Minutes were in writing, and thus, the ratification of the Minutes satisfied the TCA's requirement that the decision be in writing.

For the above reasons, the Defendant's Motion with respect to Count II is **GRANTED** and the Plaintiffs' Motion with respect to Count II is **DENIED**.

**C.    Grove City's Decision was Supported by Substantial Evidence**

Turning next to the TCA's second requirement, the Court must consider whether the written denial (in this case, the Minutes) are supported by substantial evidence contained in a written record. Plaintiffs argue that the Minutes only contain a general discussion of the application and do not specifically provide evidence or the reasons for denial. (Doc. 13, Pls.' Mot. at 12). Grove City contends that the meeting minutes are detailed enough to articulate the reasons for denial. (Doc. 14, Defs.' Mot. at 16). This Court agrees with Grove City.

The substantial evidence standard in the TCA has its roots in administrative law. *Id*. at 815. This standard creates a minimum justification that municipalities must provide when denying a permit. *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794, 799 (6th Cir. 2012) ("The 'substantial evidence' standard constructs a floor below which the justification for denying a permit cannot fall—if it does, the board's decision would violate § 332(c)(7)(B)(iii)"). This minimum justification requires "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Universal Camera v. NLRB.*, 340 U.S. 474, 477 (1951)). In other words, this Court must "determine if there is sufficient, substantiated evidence in the written record to support the reasons for denial." *Eco-Site, Inc. v. City of Huber Heights, Ohio*, No. 3:16-cv-338, 2018 WL 3092901 at *5 (S.D. Ohio June 22, 2018). This requires the government's decision be supported by evidence that is both substantial and substantiated. *Id.* (citing *Bloomfield*, 691 F.3d at 801). This means that unsupported claims by citizens or councilmembers will not withstand a substantial evidence standard. *Bloomfield*, 691 F.3d at 804. To determine that substantial evidence supported the denial, the reviewing court must be able to determine why the locality denied the application. *Roswell*, 135 S. Ct. at 814 (citing *Rancho Palo Verdes*, 544 U.S. at 128).

Courts give significant deference to the municipality's decision. *See USCOC of Greater Iowa, Inc. v. Zoning Board of Adjustment of the City of Des Moines*, 465 F.3d 817, 821 (8th Cir. 2006) ("this Court has recognized that significant deference to the fact-finder is required"); *Cellular Tel. Co. v. Bd. of Adjustment of Borough of Paramus*, 37 F. Supp. 2d 638, 645 (D. N.J. 1999) ("while the Board's decision is afforded deference with the burden on AT&T to overturn that decision, this court must scrutinize the entire record and determine whether the decision is rational and supported by substantial evidence.") (internal citations omitted); *see also Menendez-*

*Donis v. Ashcroft*, 360 F.3d 915, 918 (8th Cir. 2004) ("[U]nder the substantial evidence standard we cannot substitute our determination for that of the administrative fact-finder just because we believe that the fact-finder is clearly wrong."). The substantial evidence standard requires courts to "consider whether a zoning board acted in conformity with the relevant local laws" and the standard acts as "'a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements.'" *W. Bloomfield*, 691 F.3d at 799

In the case at hand, this Court has no trouble identifying the specific reasons for Grove City's denial of the Application. The Minutes recap a discussion amongst the City Council about several very real and significant problems with the proposed cell tower. Most importantly, the proposed cell tower did not comply with the Grove City Zoning Code requirements. For example, the City Council members expressed their concern that the tower would not be built in an appropriately zoned area. (Doc. 14, Joint Exhibit U (04162018 Minutes) at PAGEID #500). The Grove City Zoning Code, Section 1135.09(b)(12)(A)(3), specifies that cell towers must be built in one of four appropriately zoned areas: IND-1, IND-2, CF, or SD-4. (Defs.' Mot. at 2). The Plaintiffs proposed to build the cell tower in an area zoned C-2. (Doc. 14, Joint Exhibit U (04162018 Minutes) at PAGEID #500.). Further, the City Council noted that the base of the proposed cell tower would not be set back at least 100% of its height from the property line as required by Grove City Zoning Code, Section 1137.15(d). (*Id*.). The proposed cell tower would be 145–155 feet tall, but would only be located 80 feet from the south property line and 78 feet from the east property line. (*Id*. at 1; 3; 6). Thus, the proposed cell tower did not comply with either section of the Grove City Zoning Code. These violations, which are real and not merely speculative, provide sufficient justification for the City Council to deny the Application.

Plaintiffs urge this Court to look at the records in *Eco-Site, Inc. v. City of Huber Heights, Ohio* and *T-Mobile v. Charter Tp. Of W. Bloomfield*, contending that those courts granted an injunction even though the records contained more evidence than the case at hand. (Defs.' Response to Pls.' Mot. at 8) ("[t]he Grove City Council did less to comply with the TCA than did the denying bodies in *Eco-Site* and *Charter Twp. of W. Bloomfield*, and in both of those cases the [c]ourt found a TCA violation. . ."). However, there are key differences that distinguish both *Eco-Site* and *Bloomfield* from the case at hand.

In *Eco-Site*, many of the concerns about the proposed tower were unsupported or baseless. *Eco-Site*, 2018 WL 3092901 at *6 ("community member comments in opposition to the application were unsupported, generalized, and speculative"). For example, citizens were concerned that the ground water would be contaminated notwithstanding the fact that a study showed no such contamination would occur. *Id*. ("There is no substantial evidence that the proposed facility would be hazardous to existing or future neighboring uses. Mere speculation is not substantial evidence."). Further, the court in *Eco-Site* noted that the proposed cell tower would meet the local zoning requirements and opinions offered to the contrary were unsupported. *Id*. at *5–6.

*Bloomfield* is similar to *Eco-Site*. Most of the reasons offered for the denial in *Bloomfield* were based on unsupported opinions. There were five reasons given for the denial of the tower in *Bloomfield*, and three of those reasons related to aesthetic concerns. *See Bloomfield*, 691 F.3d at 799. General concerns from residents regarding the appearance of a cell tower are not sufficient reasons for denial absent supporting, substantiating evidence. *Id*. at 800–01. The *Bloomfield* court found that the aesthetic concerns presented were not based on substantial evidence. *Id*. at 801. Another reason offered, that the tower could have been built to a height of 70 feet instead of 90

feet, was not feasible given the townships' statutory requirements. *Id*. at 802 ("There is no evidence in the record to support the Townships position that a 70-foot tower would have been suitable to satisfy the zoning ordinance's requirement that two wireless providers, engaged in reasonable communication, could have collocated at this particular site."). The final reason offered for denial, that "T-Mobile has not presented a sufficient need to build the towers," failed because it was based on a "lay opinion [that] is not substantial evidence." *Id*. at 804. In other words, four out of the five reasons the municipality denied the tower in *Bloomfield* were based on pure opinion. The remaining reason for denial required a tower structure that would violate the municipality's own ordinance requirements.

This Court cannot say the same about the reasons for denial in the present case. Here, the Plaintiffs desire to construct the proposed cell tower in an area that is not zoned for such a structure. Further, the proposed cell tower is not set back far enough from the property line to meet Grove City's Zoning Code requirements. These problems with the Plaintiff's proposed cell tower, unlike the problems expressed in *Eco-Site* and *Bloomfield*, are not based on pure opinion or speculation. These problems are substantiated by looking at the cell tower plans and the Grove City Zoning Code. Thus, while Grove City may not have offered as many reasons for denial as *Eco-Site* and *Bloomfield*, the reasons offered by Grove City are supported by more substantial evidence—and substantial evidence is what the TCA requires. Thus, this Court is not persuaded by Plaintiffs' reliance on *Eco-Site* and *Bloomfield*.

While this Court concludes that Grove City did provide sufficiently detailed reasons for denying the Application in the Minutes, we note that this course of action was imprudent. *See Roswell*, 135 S. Ct. at 816. The Supreme Court cautioned against this precise type of case and stated that the best practice is for municipalities to provide their reasons for denial in a separate

statement. *Id*. ("If the locality writes a short statement providing its reasons . . . the locality need not worry that, upon review of the record, a court will either find that it could not ascertain the locality's reasons or mistakenly ascribe to the locality a rationale that was not in fact the reason for the locality's denial."). We reiterate that point here—municipalities are best served by explicitly listing their reasons for denial in separate statements leaving nothing for a reviewing court to question.

For the above reasons, this Court finds that the Minutes of the April 16, 2018 meeting contain substantial evidence supporting the denial of the Application, and therefore, the Defendant's Motion with respects to Count I is **GRANTED** and the Plaintiffs' Motion with respect to Count I is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED** and Plaintiffs' Motion is **DENIED**. Defendants are entitled to judgment on Counts I and II. Count IV is **DISMISSED** pursuant to the parties' stipulated dismissal. (Doc. 15, Stip. Dismissal).

Count III remains pending. In Count III, Plaintiffs allege that there is a significant gap in service coverage which creates an effective prohibition on personal wireless services. The Court encourages the parties to work towards an amicable solution to resolve this remaining claim. The parties should contact Magistrate Judge Jolson's chambers if they would like assistance in obtaining a mediator to reach an agreeable solution. If the parties are unable to reach a resolution, the parties shall submit briefs on the remaining issue. Any motions for summary judgment should be filed on or before November 1, 2019. Responses and replies shall be filed in accordance with the local rules. There has been some testimony on this issue (the site engineer), therefore the Court assumes discovery is complete. However, if this is not the case, the parties should contact Magistrate Judge Jolson's chambers to establish a scheduling order and continuance of the briefing schedule.

The Clerk shall remove Documents 13 and 14 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**